# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD L. FIELD, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| | ) CIVIL ACTION NO. |
| Plaintiff, | ) ) 3:06 cv 1481 (MRK) |
| | ) CLASS ACTION COMPLAINT |
| vs. | ) |
| ADVO, INC., S. SCOTT HARDING, JEFFREY E. EPSTEIN, and DONALD S. SCHNEIDER, | ) ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) ) |

Plaintiff, Richard L. Field ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ADVO, Inc. ("ADVO" or the "Company") securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal class action on behalf of purchasers of the common stock of ADVO between July 6, 2006 and August 30, 2006, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      ADVO is the nation's leading direct mail media company, with annual revenues of nearly $1.4 billion.

3.    The complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being. Specifically, in part to complete a merger with Valassis Communications, Inc. ("Valassis"), defendants failed to disclose: (1) that the Company misrepresented the success of its business and its prospects for future success; (2) that the Company did not possess the business prospects to meet its financial projections; (3) that the Company lacked adequate internal controls; and (4) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

## JURISDICTION AND VENUE

4.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

5.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

6.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.  Additionally, the Company maintains a principal executive office within this Judicial District.

7.    In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

8.      Plaintiff, Richard L. Field, as set forth in the accompanying certification, incorporated by reference herein, purchased ADVO common stock at artificially inflated prices during the Class Period and has been damaged thereby.

9.      Defendant ADVO is a Delaware corporation with its principal place of business located at One Targeting Centre, Windsor, Connecticut 06095.

10.     Defendant S. Scott Harding ("Harding") was, at all relevant times, the Company's Chief Executive Officer and a director.

11.     Defendant Jeffrey E. Epstein ("Epstein") was, at all relevant times, the Company's Executive Vice President and Chief Financial Officer.

12.     Defendant Donald S. Schneider ("Schneider") was, at all relevant times, the Company's Executive Vice President.

13.     Defendants Harding, Epstein, and Schneider are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of ADVO's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The

3

Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS
### Background

14.     ADVO is the nation's leading direct mail media company, with annual revenues of nearly $1.4 billion.

### Materially False and Misleading
### Statements Issued During the Class Period

15.     The Class Period begins on July 6, 2006.  At that time, ADVO announced that the Company had entered into a definitive merger agreement with Valassis, under which Valassis would acquire all of the outstanding common shares of ADVO stock for $37 per share in cash. Specifically, in a joint press release with Valassis, ADVO stated:

> Valassis, a leading company in marketing services, announced today that it has entered into a definitive merger agreement with ADVO, the nation's leading direct mail media company, under which it will acquire all of the outstanding common shares of ADVO stock for $37 per share in cash in a merger. The fully financed transaction is valued at approximately $1.3 billion (on a diluted basis), including approximately $125 million in existing ADVO debt which Valassis expects to refinance.

> This acquisition will create the nation's largest integrated media services provider. The combination will feature the most comprehensive product and customer offering in the industry serving 20,000 advertisers worldwide, including 94 of the top 100 advertisers in the United States. The combined company will be positioned to capture growth across the expanded product and service portfolio, delivering customized, targeted solutions on a national, regional, zip code, sub-zip code and household basis ADVO's shared mail distribution business penetrates up to 114 million households, or 90% of U.S. homes, adding substantially to Valassis' weekly newspaper distribution of over 60 million households. The combined company will have 7,900 employees with operations in nine countries.

"Together, Valassis and ADVO will be well positioned for growth as a more diversified company with complementary capabilities, product offerings and clients," said Alan F. Schultz, Valassis Chairman, President and CEO. "We will have an unsurpassed ability to deliver value and savings to consumers where, when and how they want -- and to do so with advanced analytics and targeting capabilities that maximize advertisers' return on investment. This combination is a first in the media services industry and uniquely positions us to capture growth by anticipating the needs of the marketplace and evolving to meet them."

S. Scott Harding, ADVO Chief Executive Officer, added, "Advertisers' needs are becoming increasingly sophisticated and require solutions that are both scalable and customized. Our new company will deliver on these requirements with an unrivaled portfolio of products, leadership across multiple media platforms, proven targeting expertise and unmatched reach. In today's media world, that is an undeniably attractive combination."

Mr. Schultz continued, "We are very pleased to welcome ADVO into the Valassis family. This is an exciting opportunity for employees, clients and shareholders."

16. On August 2, 2006, ADVO announced financial results for the third fiscal quarter ended July 1, 2006. The Company reported that revenue for its third fiscal quarter ended July 1, 2006 was $386.8 million versus $353.6 million in the prior year quarter, and operating income was $12.7 million versus $22.4 million in the prior year quarter. Diluted earnings per share were $0.22 versus $0.41 in the prior year quarter. Additionally, ADVO stated that the Company also incurred expenses of approximately $0.05 in earnings per share related to its anticipated merger with Valassis.

17. Commenting on these results and on the merger with Valassis, defendant Harding stated:

We have successfully converted to our new order entry system during the quarter. This is an accomplishment that has been four years in the making. I am proud of the tremendous efforts given by ADVO associates across the organization to overcome the normal challenges associated with the implementation of an enterprise

wide system and successfully go live. As we put this system transition behind us, we are confident in our ability to gain focus and momentum in our core business operations as we close fiscal 2006 and move into fiscal 2007.

We are working closely with Valassis to develop and, after closing, execute a successful integration of the two companies. This merger will create a diversified company, combining complementary capabilities, product and service offerings and clients. The combined Company will be well positioned for future growth with an expanded product portfolio which can serve the diverse media needs in today's marketplace. We are excited about the opportunities this will bring for employees, shareholders and clients as we create the nation's largest integrated media solutions provider.

18.     On August 10, 2006, ADVO filed its quarterly report with the SEC on Form 10-Q.  The Company's Form 10-Q reaffirmed the Company's previously announced financial results and contained the following Sarbanes-Oxley required certifications signed by defendants Harding and Epstein:

> 1)      I have reviewed this report on Form 10-Q of ADVO, Inc (the "registrant");
>
> 2)      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3)      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4)      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and we have:

a)      Designed such disclosure controls and procedures or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared; and

b)      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; and

c)      Evaluated the effectiveness of this registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

5)      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

a)      All significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls over financial reporting.

***

## SECTION 906 CERTIFICATION

a)      The Quarterly Report on Form 10-Q of the Company for the quarterly period ended July 1, 2006 fully complies with the

requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

b)      The information contained in the Quarterly Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

19.      With respect to the presentation of its financial results, the Company also stated: "In the opinion of management, all adjustments considered necessary for a fair presentation have been included."

20.      Additionally, and with respect to the launch and implementation of the Company's new order delivery system in April 2006, the Company stated:

> In April 2006, the Company launched its new order delivery system, known as the Service Delivery Redesign project ("SDR") upgrading current software applications, employing new technology and work processes to speed information flow and integrating business processes throughout the organization. The SDR implementation affected either directly or peripherally virtually all functions in the Company, requiring a significant effort by all associates. Associates' regular day-to-day activities were replaced by "skill learning" activities to become familiar with the new system and at the same time to gain knowledge of new business processes. SDR directly impacted the following functions contracting, order management, graphics print, operations, sales accounts receivable, billing, collections, finance, and information technology.
>
> The Company encountered transitional issues during the SDR implementation. Problems with entering and processing customer orders, temporary inefficiencies in production, shipping disruptions and delayed customer invoicing were experienced. These type of issues are expected with the launch of new systems. As a result, the Company incurred delayed collection of accounts receivable and additional costs that contributed to the lower profit margins realized in the third quarter of fiscal 2006. The Company believes it has identified and corrected many of the issues associated with the SDR implementation during of the third quarter.

21.      On August 16, 2006, ADVO and Valassis issued a joint press release entitled "Valassis' Proposed Acquisition of ADVO Receives Regulatory Clearance." Therein, ADVO

stated:

> Valassis, the leading company in marketing services and
> Connective Media, and ADVO, the nation's leading direct mail
> media company, announced today that the Federal Trade
> Commission has granted early termination of the waiting period
> under the Hart-Scott-Rodino Antitrust Improvements Act of 1976,
> as amended, with respect to the previously announced agreement
> to acquire ADVO by Valassis. The consummation of the
> acquisition is subject to approval by ADVO's shareholders and
> other customary closing conditions.

22.     The statements contained in ¶¶ 15-20 were materially false and misleading when

made because defendants failed to disclose or indicate the following: (1) that the Company

misrepresented the success of its business and its prospects for future success; (2) that the

Company did not possess the business prospects to meet its financial projections; (3) that the

Company lacked adequate internal controls; and (4) that, as a result of the above, the Company's

financial statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

23.     On August 30, 2006, after the market closed, ADVO shareholders were stunned

when Valassis announced that it had sued ADVO in the Delaware Chancery Court to rescind its

$1.3 billion merger agreement with ADVO based on fraud and material adverse changes, and

had alleged that ADVO management materially misrepresented the financial health of the

company and failed to reveal internal control deficiencies. Specifically, Valassis stated:

> Valassis Communications, Inc. today sued ADVO, Inc. in the
> Delaware Chancery Court to rescind its $1.3 billion merger
> agreement with ADVO based on fraud and material adverse
> changes, alleging that ADVO management materially
> misrepresented the financial health of the company and failed to
> reveal internal control deficiencies.
>
> According to the complaint, ADVO intentionally provided
> Valassis with "materially false financial information" and
> "withheld material information" at a time when the operating
> income was materially off forecast. The complaint also alleges that

ADVO executives knew of, but did not disclose, significant internal control deficiencies associated with ADVO's enterprise-wide order-to-cash system.

"We believe that taking this action is in the best interest of our shareholders," said Alan F. Schultz, Valassis Chairman, President and CEO. "ADVO left us with no choice. The pertinent information we received was erroneous, projections were grossly inaccurate and we believe we were the victims of fraud."

24.    On this news, shares of ADVO plummeted to as low as $25.92 per share, before closing on August 31, 2006 at $28.59 per share, a loss of $8.21, or 22.3 percent, on unusually heavy trading volume.

## ADVO'S VIOLATION OF GAAP RULES
## IN ITS FINANCIAL STATEMENTS
## FILED WITH THE SEC

25.    These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for and disclosure about its revenues, in violation of GAAP and SEC rules.

26.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

27.    Given these accounting irregularities, the Company announced financial results

that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

(c)     The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)     The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79);

(f)     The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶ 58-59); and

(g)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated. (FASB Statement of Concepts No. 2, ¶95).

The adverse information concealed by defendants during the Class Period and detailed above

was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the common stock of ADVO between July 6, 2006 and August 30, 2006, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ADVO's common stock was actively traded on the New York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by ADVO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by defendants' acts as alleged herein;

b.    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of ADVO; and

c.    to what extent the members of the Class have sustained damages and the proper measure of damages.

33.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

34.    The market for ADVO's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, ADVO's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired ADVO common stock relying upon the integrity of the market price of ADVO's common stock and market information relating to ADVO, and have been damaged thereby.

13

35.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of ADVO's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about ADVO's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of ADVO and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**LOSS CAUSATION**

37.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.     During the Class Period, Plaintiff and the Class purchased common stock of ADVO at artificially inflated prices and were damaged thereby.  The price of ADVO common stock declined when the misrepresentations made to the market, and/or the information alleged

herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

39.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding ADVO, their control over, and/or receipt and/or modification of ADVO's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ADVO, participated in the fraudulent scheme alleged herein.

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

40.     At all relevant times, the market for ADVO common stock was an efficient market for the following reasons, among others:

a.     ADVO stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b.     As a regulated issuer, ADVO filed periodic public reports with the SEC and the NYSE;

c.     ADVO regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire

15

services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.      ADVO was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for ADVO common stock promptly digested current information regarding ADVO from all publicly-available sources and reflected such information in ADVO's stock price. Under these circumstances, all purchasers of ADVO common stock during the Class Period suffered similar injury through their purchase of ADVO common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized

and/or approved by an executive officer of ADVO who knew that those statements were false when made.

### FIRST CLAIM
#### Violation of Section 10(b) of
#### The Exchange Act and Rule 10b-5
#### Promulgated Thereunder Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase ADVO common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

45.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for ADVO's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business,

operations and future prospects of ADVO as specified herein.

47.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ADVO's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about ADVO and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of ADVO common stock during the Class Period.

48.    Each of the Individual Defendant's primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

49.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing ADVO's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of ADVO common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of ADVO's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired ADVO common stock during the Class Period at artificially high prices and were damaged thereby.

51.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

ADVO was experiencing, which were not disclosed by defendants, Plaintiff and other members

of the Class would not have purchased or otherwise acquired their ADVO common stock, or, if

they had acquired such common stock during the Class Period, they would not have done so at

the artificially inflated prices which they paid.

52.     By virtue of the foregoing, defendants have violated Section 10(b) of the

Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and

the other members of the Class suffered damages in connection with their respective purchases

and sales of the Company's common stock during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

54.     Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

55.     The Individual Defendants acted as controlling persons of ADVO within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level

positions, and their ownership and contractual rights, participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various

statements which Plaintiff contends are false and misleading.  The Individual Defendants were

provided with or had unlimited access to copies of the Company's reports, press releases, public

filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after

20

these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.    As set forth above, ADVO and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

      a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

      b.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      d.    Such other and further relief as the Court may deem just and proper.

## CERTIFICATION

I, (print name) RICHARD L. FIELD ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the Complaint, authorizes its filing, and retains Schiffrin & Barroway, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.     Plaintiff's purchase and sale transaction(s) in the ADVO, Inc. (NYSE: AD) security that is the subject of this action  during the Class Period is/are as follows :

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| COMMON | 790 | B | | 7-6-06 | 35.62 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.     Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.     During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below:_____.

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16 day of September, 2006.

Signature

Richard L. Field
Print Name

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated:   September 20, 2006

**COHEN AND WOLF, P.C.**

By: _____

Ari J. Hoffman, Esq.
Federal Bar No. ct22516
1115 Broad Street
P.O. Box 1821
Bridgeport, CT  06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901
ahoffman@cohenandwolf.com

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
Alison K. Clark
280 King of Prussia Rd.
Radnor, PA 19087
(610) 667-7706

**Attorneys for Plaintiff**